Mark Brnovich
Attorney General
Firm Bar No. 14000

Kara M. Karlson (029407)
Joseph E. La Rue (031348)
  *Assistant Attorneys General*
Office of the Attorney General
2005 N. Central Ave.
Phoenix, AZ  85007
Telephone (602) 542-4951
Facsimile (602) 542-4385
kara.karlson@azag.gov
joseph.larue@azag.gov
AdminLaw@azag.gov

Attorneys for Defendant
Katie Hobbs, Arizona Secretary of State

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Roque "Rocky" De La Fuente,<br><br>    Plaintiff,<br><br>vs.<br><br>Katie Hobbs, in her official capacity as the Secretary of State of Arizona,<br><br>    Defendant. | Case No: 2:16-cv-02419-JZB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

**INTRODUCTION**

Plaintiff alleges that he hoped to gain ballot access as an Independent candidate in Arizona, but was prevented from doing so by the state's petition-signature requirements. Plaintiff also alleges that he wanted to qualify a new political party for ballot access but was also thwarted in this endeavor Arizona's requirements. Not so. Plaintiff's own decisions—not Arizona's laws—prevented him from qualifying for the ballot. (Secretary's Motion for Summary Judgment, Doc. 55 ("Motion") at 3-4.) Simply put, Plaintiff did not make the effort that "a reasonably diligent candidate" would make to achieve ballot access. (*Id*.) Instead, the man who would be president delayed his signature-gathering activity until the very eve of the deadline to submit petitions, and even then advanced only a half-hearted effort. (*Id*. at 3.) And Plaintiff did not make any effort whatsoever to qualify his political party in Arizona. (*Id*. at 4.)

Having failed to do what was necessary to qualify for the ballot, Plaintiff now asks this Court to declare Arizona's requirements unconstitutional. But Arizona's requirements easily satisfy constitutional scrutiny. As explained in the Motion and the Secretary's response to Plaintiff's motion for summary judgment (Doc. 74 ("Response")), Arizona's ballot access requirements satisfy the applicable constitutional tests; they are significantly less restrictive than other requirements that the Supreme Court and other courts have upheld; and, they fall squarely within the mainstream of such laws nationwide.

Plaintiff has now filed his response opposing summary judgment for the Secretary. (Doc. 79 ("Opposition").) Despite being nearly twice as long as the Rules allow,[1] Plaintiff's Opposition does not alter the fact that, as a matter of law, Arizona's ballot access requirements are constitutional. This Court should grant the Secretary's request for summary judgment.

---

[1] Plaintiff's Opposition is 29 ½ pages in length, and appears to be in 12 point font, whereas L.R. Civ. P. 7.2(e) allows 17 pages of text and requires the font size to be 13 point or larger.

1

**ARGUMENT**

**I.     Plaintiff Lacks Standing to Bring His Challenges.**

Plaintiff seeks to overcome his lack of standing, *see* Motion at 5-7, by submitting a new declaration with his Opposition. It states his intention to attempt to qualify for the Arizona ballot as an Independent candidate for president in 2020, and also that he will attempt to qualify his political party as a new party in Arizona if the signature requirements for Independent candidates remain in force. (Doc. 79-2 ("DLF Decl.") ¶¶ 5-6.) He states further that he "requires certainty as to the rules that will be applied" for ballot access. (*Id.* ¶ 7.) On the basis of those and his previous affirmations, Plaintiff asserts that he has standing to maintain his challenges. (Opposition at 9-13.)

Plaintiff's attempt to shore up his standing deficiency fails. First, it does not overcome the standing deficiencies already noted in the motion for summary judgment: Plaintiff's intentions are too speculative to give rise to a justiciable injury. (Motion at 5-7.) Second, Plaintiff's new declaration, that he "has announced" his intentions to run for president, is not credible.[2] Plaintiff's official website makes no mention of such an announcement. *See* Roque De La Fuente, Together We Are Stronger, *available at* https://vote.rocky101.com/en_us/ (last visited February 15, 2019). Yet in his new declaration, Plaintiff states that his campaign strategy in 2016 focused on "the internet to make [his] campaign known to people[.]" (DLF Decl. ¶ 10.) It is reasonable to think that, if Plaintiff had announced his intention to run for president, his website would say so. That it does not calls into question the credibility of Plaintiff's claim. This Court should discount it and find that Plaintiff has not alleged a sufficiently-concrete injury to maintain his challenges to Arizona's signature requirements.

---

[2] The Ninth Circuit's rule is that courts cannot disregard declarations merely because they are offered with motions for summary judgment, or because they are "self-serving." *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007). Rather, the fact that a declaration is self-serving "bears on its credibility, not on its cognizability . . . ." *Id*.

2

## II. Arizona's Signature Requirement for Independent Candidates Is Constitutional.

In his Opposition, Plaintiff wrongly suggests that *Anderson v. Celbrezze*, 460 U.S. 780 (1983), overruled previous Supreme Court precedent and established a new test for signature requirements for ballot access. (Opposition at 13.) From this misguided starting point, Plaintiff suggests that the cases the Secretary relied upon in her Motion, which approved signature requirements as high as five percent of *all registered voters in the state*, (Motion at 8-10), are no longer good law. (Opposition at 13-23.) Plaintiff proceeds to question the constitutionality of Arizona's much-lower requirement that Independent candidates gather signatures equal to three percent of only the registered Independent voters. (*Id.*) And Plaintiff also suggests that the Secretary attempts to rely upon an "old bright line ballot access analysis" under which signature-requirements below the five-percent threshold are per se constitutional. (*Id.* at 13.)

Plaintiff is wrong on all counts. *Anderson*, which involved a challenge to an early filing deadline, *id.* at 782-83, did not upset the Court's signature-requirement jurisprudence. Rather, the *Anderson* Court emphasized that evaluations of ballot access restrictions involve a balancing of the state's legitimate interests with the constitutional rights of voters and candidates, *id.* at 788-89—the same principle enunciated in the Court's prior signature-requirement decisions. In fact, the *Anderson* Court cited three of those decisions for support for this proposition of law. *Id.* at 789 (*citing Williams v. Rhodes*, 393 U.S. 23 (1968), *American Party of Texas v. White*, 415 U.S. 767 (1974), and *Storer v. Brown*, 415 U.S. 724 (1974)).

Moreover, because the signature-requirement jurisprudence requires the same balancing of interests that the *Anderson* Court recognized, there was never the "bright line" rule that Plaintiff suggests. (Opposition at 13.) In *Storer*, for example, the Supreme Court recognized that the challenged five-percent signature requirement was within the range previously upheld as constitutional, but nonetheless remanded the proceedings for a determination regarding whether the statutory scheme as a whole

allowed sufficient opportunity for Independent candidates to achieve ballot access. *Storer*, 415 U.S. at 739-40. The Secretary acknowledged this in her motion for summary judgment, and noted the numerous factors in Arizona law that, taken together, allow for constitutionally-sufficient ballot access for Independent candidates. (Motion at 8-10.) Plaintiff's suggestion of a former, bright-line rule may make a good windmill at which to tilt, but it is not an accurate statement of the law or of the Secretary's position.

Attempting to support his incorrect position that a sea-change in the law has occurred, Plaintiff cites to a solitary case from the Northern District of Georgia. (Opposition at 13, 20-21 (*citing Green Party of Georgia v. Kemp*, 171 F.Supp. 3d 1340 (N.D. Ga. 2016)). But that case presents no paradigm shift.[3] Rather, the *Green Party* court applied the aforementioned balancing test to find that Georgia's one-percent signature requirement for candidates was unconstitutionally burdensome. *Green Party*, 171 F.Supp. 3d 1340. That decision rested on particular factors present in Georgia's ballot access scheme, which were "some of the most stringent compared to other states'" requirements. *Id*. at 1369. Arizona's requirements are not like that. In fact, the *Green Party* court approvingly noted that, although the Green Party's candidate for president in 2012 had not been able to achieve ballot access in Georgia, he qualified for the ballot in Arizona. *Id*. That court also noted that Arizona's signature requirements were only about half as many as Georgia's. *Id*. at 1364. *Green Party* thus cannot be used to invalidate Arizona's ballot access requirements for Independent candidates.

Plaintiff also suggests that something is amiss because Arizona requires fewer signatures for new political parties than Independent candidates to achieve ballot access. (Opposition at 17-19.) Specifically, Plaintiff suggests that Arizona has "established" that the lesser number of signatures is sufficient to satisfy all of the state's important

---

[3] If the *Green Party* decision actually does contradict Supreme Court and Eleventh Circuit precedent, it is not good law. *See Jenness v. Fortson*, 403 U.S. 431 (1971) (upholding Georgia's (at that time) five-percent requirement); *Swanson v. Worley*, 490 F.3d 894 (11th Cir. 2007) (upholding Alabama's three-percent requirement).

interests, and so any greater requirement for Independent candidates cannot be narrowly tailored. (*Id*.) But this argument fails for the same reason as Plaintiff's equal protection argument. (*See* Motion at 12-14 (explaining why Plaintiff's equal protection claim fails).) Political parties and candidates for office are different things, and the state interests implicated by each are different. (*Id*.) Arizona does not have to treat them the same. *See Lindsay v. Bowen*, 750 F.3d 1061, 1064 (9th Cir. 2014) (*quoting Plyler v. Doe*, 457 U.S. 202, 216 (1982) (explaining that the Constitution "does not require things that are different in fact or opinion to be treated in law as though they were the same.'")). Plaintiff's attempt to avoid these conclusions by repackaging his argument as a tailoring-related one is unpersuasive. Besides, as explained in the Secretary's motion for summary judgment, strict scrutiny is not the proper level of scrutiny anyway because Arizona's signature requirement imposes only a minimal burden. (Motion at 11.)

Finally, Plaintiff suggests that the completely arbitrary requirement of 5,000 signatures is sufficient to avoid ballot clutter and voter confusion. (Opposition at 20-21.) Even if that were true, it would not be dispositive. Other state interests, besides the avoidance of ballot clutter and voter confusion, are served by requiring that candidates demonstrate substantial support before their names are placed on the ballot. For example, requiring such support for candidates helps ensure that the choices presented to voters are serious candidates. *See, e.g.*, *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986) (recognizing that avoiding the "presence of frivolous candidacies" on the ballot is a legitimate state interest).[4] States are allowed to require that candidates "make a preliminary showing of *substantial* support in order to qualify for a place on the ballot" for this very reason. *Anderson*, 460 U.S. at 788 n.9 (emphasis added). Plaintiff's suggestion that a candidate *for President of the United States* should only have to gather

---

[4] This is important in Arizona, which has a recent history of accusations involving possible "sham" candidacies. (Second Declaration of Joseph E. La Rue, Doc. 82, at ¶¶ 3-4.)

5

1 the support of 5,000 people does not seem to fit the bill when there were 3.5 million
2 registered voters in Arizona in 2016 and 2.6 million of them voted. (State of Arizona
3 Official Canvass, 2016 General Election, Doc. 57-1, at 1.)

### III. Arizona's Signature Requirement for New Political Parties Is Constitutional.

Plaintiff argues that Arizona's signature-distribution requirement for new political parties is unconstitutional. (Opposition at 26-30.) The Secretary has already explained why that is not so. (Motion at 14-16.) Arizona's requirement is different than the types of requirements that have been invalidated. (*Id.* at 16.) Specifically, Arizona allows new political parties great flexibility regarding which counties they target to gather signatures, while still ensuring that a political party that can place candidates for statewide office on the ballot enjoys support across the state. (*Id.*) Moreover, due to Arizona's population distribution, the signature-distribution requirements do not violate the one-person, one-vote rule at issue in the cases cited by the Plaintiff. Arizona's formula is thus different than the rigid formulas that were invalided in the cases Plaintiff cites, (Opposition at 27-29,) and so is constitutionally permissible.

### CONCLUSION

For the reasons stated by the Secretary in her various briefing before this Court, the Court should grant the Secretary's motion for summary judgment.

Respectfully submitted this 19th day of February, 2019.

                Mark Brnovich
                Attorney General

                s/Joseph E. La Rue
                Kara M. Karlson (029407)
                Joseph E. La Rue (031348)
                    *Assistant Attorneys General*

                Attorneys for Defendant Katie Hobbs,
                Arizona Secretary of State

# CERTIFICATE OF SERVICE

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, this 19th day of February, 2019:

Paul A. Rossi, Esq.
IMPG Advocates, Inc.
316 Hill Street
Mountville, PA 17554
Phone: 717.961.8978
Paul-Rossi@comcast.net


Morgan J.C. Scudi
Lucas I Mundell
Scudi & Ayers, LLP
5440 Morehouse Dr., Ste. 4400
San Diego, CA  92121
mscudi@scudilaw.com
lmundell@scudilaw.com

*Attorneys for Plaintiff*

                                          s/ Maureen Riordan
                                          Maureen Riordan

PHX-7640460-v4