1

2

3

Paul A. Rossi, Esq.
4    IMPG Advocates, Inc.
316 Hill Street
5    Mountville, PA  17554
Phone:  717.961.8978
6    Paul-Rossi@comcast.net

7                          UNITED STATES DISTRICT COURT

8                          FOR THE DISTRICT OF ARIZONA

9    ROQUE "ROCKY" DE LA FUENTE,              Case No.: CV-16-02419-PHX-JZB

10                  Plaintiff,

11   vs.                                       PLAINTIFF'S OPPOSITION TO DEFENDANT'S
                                              MOTION TO EXCLUDE THE EXPERT TESTIMONY
12   STATE OF ARIZONA, et al.                  OF RICHARD WINGER

13                  Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   PLAINTIFF'S OPPOSITION TO DEFENDANT'S  MOTION TO EXCLUDE THE EXPERT TESTIMONY OF
     RICHARD WINGER - 1

## I.     INTRODUCTION

The testimony provided by Plaintiff's expert witness Richard Winger should not be excluded because it is reliable as a compilation of facts, supported by citations and establish that no state has had more than six candidates on its presidential ballot when the state requires the collection and timely filing of just 5,000 valid signatures from registered voters.  The fact that no state has had more than 6 candidates appear on its presidential general election ballot when access is conditioned on the collection and filing of 5,000 valid signatures is conclusive evidence that Arizona's legitimate interest to protect against ballot clutter and voter confusion is vindicated at a signature level far below the number of signatures required under the formula imposed under A.R.S. 16-341 and where Justice Harlan explained in *Williams v. Rhodes*, 393 U.S. 23, 46-47 (1968) explained that signature requirements imposed on independent and third party candidates can only be justified to prevent ballot clutter and voter confusions which cannot be said to occur with 8 candidates on the ballot.

Richard Winger's expert testimony on this issue has been accepted and expressly relied upon by the United States District Court for the Northern District of Georgia in striking down Georgia's long-standing 50,000 signature collection requirement imposed on independent candidates and lowering the signature requirement to just 7,500 signatures – a decision which was adopted by the Eleventh Circuit in its own affirmance of the district court's decision. *Green Party of Georgia v. Kemp*, 171 F.Supp. 1340 (N.D. Ga. 2016).  Richard Winger's identical testimony on this issue was also most recently adopted by the United States District Court for the Eastern District of Michigan in preliminarily enjoining Michigan's 30,000 signature collection requirement in favor of a 5,000 signature collection requirement. *Graveline v. Johnson*, 336 F.Supp. 3d 801 (E.D. Mich. 2018).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S  MOTION TO EXCLUDE THE EXPERT TESTIMONY OF RICHARD WINGER - 2

1
2
3        Furthermore, contrary to Defendant's contention Richard Winger is in a position to
4   testify as to the purpose and intent of A.R.S 16-341 because he worked directly with the Ross
5   Perot supporters in Arizona and the then Secretary of State of the State of Arizona to make the
6   process easier for independent presidential candidates to gain access to Arizona's presidential
7   general election ballot following the 1992 general election.  The purpose of A.R.S. 16-341 was
8   to make it easier for independent candidates to gain access to Arizona's general election ballot,
9   not make it increasingly more difficult and expensive for independent candidates to secure
10  access to Arizona's general election ballot owing to the unforeseen increase in the number of
11  registered independent voters in Arizona.  *See*, Exhibit A, Second Declaration of Richard Lee
12  Winger.

13  **II.    ARGUMENT**

14       Under Rule 702, Defendant's motion *in limine* must be denied because Richard Winger's
15  knowledge, skill, experience and training providing testimony by opinion or otherwise (a) will
16  help the trier of fact to understand the evidence and determine a fact in issue; (b) his testimony is
17  based solely on facts supported by extensive citations; (c) his testimony is the product of reliable
18  principles or methods, most notably a forensic collection of historical ballot access data and the
19  impact that signature gathering requirements have had on the number of candidates appearing on
20  state presidential election ballots; and (d) Winger has consistently provided the Court with the
21  most updated status of signature collection requirements imposed by all 50 state jurisdictions.
22
23       **A.     Winger's Testimony is Reliable**

24       Defendant objects, and therefore denominates Winger's testimony unreliable and
25  unhelpful, because he compares both the raw number (where necessary derived from a statutory
26  formula) of signatures that each state jurisdiction requires independent presidential candidates to

27
28  PLAINTIFF'S OPPOSITION TO DEFENDANT'S  MOTION TO EXCLUDE THE EXPERT TESTIMONY OF
    RICHARD WINGER - 3

collect to secure ballot access and then – in a separate column – converts the raw number of signatures into a percentage of the total number of registered voters within that jurisdiction to which that raw number equates.  Defendant avers that "given the diversity of the States' approaches to calculating their signature requirements…it is arbitrary and misleading to chose a uniform divisor."  Defendant's argument wholly lacks merit.  Winger derived each state's signature requirement (which is a knowable number precisely because every candidate needs to know exactly how many valid signatures they must collect in order to gain ballot access) from whatever formula, or statutorily defined number for 2016 and then simply reports what that raw number of signature that each state required in 2016 to gain ballot access.  Yes, some states impose a flat number of signatures and other states derive the (knowable) number of signatures that must be collect via a formula, as does the challenged statute in Arizona (A.R.S. 16-341). Whatever the resulting number, that number can then be divided into the total number of registered voters to ascertain the percentage of registered voters that an independent presidential candidate is required to collect to secure ballot access.  The percentage of registered voter analysis is the only way, and the correct way, to properly compare how much of the electorate is required to sign a candidate's election petition to meet the "modicum of support" requirement to require the state to grant the candidate access to the general election ballot.  A small state requiring the collection of 1,000 signatures to show a "modicum of support" within its small population would not necessary convert to the State of California where 1,000 registered voters many not accurately trigger the "modicum of support" threshold to require ballot access.  The percentage of registered voters conversion is also the only way to judge if a state's raw signature total is more or less difficult to satisfy by requiring potentially more and more skeptical members

PLAINTIFF'S OPPOSITION TO DEFENDANT'S  MOTION TO EXCLUDE THE EXPERT TESTIMONY OF RICHARD WINGER - 4

of the electorate (as you get deeper into the jurisdiction's electorate) to sign an election petition to gain ballot access.

Judge Story in *Green Party of Georgia v. Kemp*, 171 F.Supp. 3d 1340 (N.D. Ga. 2016) thought a comparison of the 7,500 signature collection requirement that he order in term of other state's requirements was helpful noting:

> The Court is sensitive to the State's interests here. Comparing the requirements of other states, 7,500 signatures places Georgia in the most restrictive third of the States.  That is 66% of states require fewer signatures, which 33% require more.

*Id*. at 1374.   Richard Winger simply takes that analysis one step further to give the court the option to make a more consistent comparison among jurisdictions with vastly difference electorate in terms of numbers of registered voters.  As noted many time in the briefs, both Judge Story in *Green Party of Georgia v. Kemp* and the district court in *Graveline v. Johnson*, 336 F.Supp 3d (E.D. Mich. 2018) accepted Mr. Winger's testimony and relief on his testimony in support of their finding that their state's signature collection requirement substantially above 5,000 signatures was unconstitutional.

Defendant also objects as to the updated nature of Richard Winger's testimony, concocting some sort of complaint that showing what the current formual (as recently changed by Court Order or the state legislature) raw number of signatures would have been in 2016 if the current formula was in place is misleading.  To the contract, Winger's updated testimony to show the Court what the state of the ballot access law are today and to show what those numbers would have been in 2016 is to provide the Court with an apples to apples comparison of the current state of the law as compared to the signatures Plaintiff was required to collect in 2016. Specifically, the three States that Defendant complaints about, North Carolina, Maryland, and Oklahoma, all lowered their signature requirements for independent candidates (Maryland by

PLAINTIFF'S OPPOSITION TO DEFENDANT'S  MOTION TO EXCLUDE THE EXPERT TESTIMONY OF RICHARD WINGER - 5

1
2
3
4
5
6
7

Court Order during the 2016 presidential election) and Mr. Winger shows what the new requirements are as applied to 2016 because the complaint in this action arose from the raw signature collection requirement required of Plaintiff by Arizona in 2016!  Apples to Apples. Essentially, Defendant complains that they do not want the Court to know that three States lowered their signature collection requirements during or after the 2016 election because it shows that how out-of-synch Arizona's signature collection requirement really are in real terms.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Lastly, Count I and II of Plaintiff's Second Amended Complaint is solely about the unconstitutionality of Arizona's excessive signature gathering requirement for independent presidential candidates.  Likewise, Mr. Winger's testimony is constrained to that issue.  Under Rule 702 an expert is not required to testify about every possible permutation that Defendant wishes to raise in an effort to deflect the Court's attention away from the central issue.  In this case, Defendant attempts to allege that because every state has many different ballot access restrictions this Court cannot focus on the real constitutional infirmity (as have all other district court's when confronted to excessive signature collection requirements) as presented by Plaintiff and therefore Mr. Winger's testimony is not helpful.  As explained in Plaintiff's Reply brief, the ballot access restrictions in other states, whatever they may be, have no bearing on the excessive nature of Arizona's signature collection requirement when it is considered in light of vindicating the sole state interest sufficient to justify signature collection requirements – that is to prevent ballot clutter and voter confusion.   Mr. Winger properly confines his analysis to this central issue and under Rule 702 is permitted to do so.

25

**B.      Winger's Testimony Regarding Legislative Intent Should Not Be Excluded**

26
27
28

Contrary to Defendant's argument, Mr. Winger is uniquely qualified to testify as to the legislative intent on adopting the challenged signature collection requirement imposed on

1 independent candidates, because he worked directly with Ross Perot supporters in Arizona and

2 the then Secretary of State of the State of Arizona to make the ballot access process easier for

3 independent presidential candidates to gain access to Arizona's presidential general election

4 ballot.  He was in direct consultation with Arizona in order to make ballot access less onerous for

5 independent presidential candidates.  *See*, Exhibit A, Second Declaration of Richard Lee Winger..

6

7 **III.     CONCLUSION**

8          Accordingly, Mr. Winger's expert testimony is based on his specialized knowledge

9 concerning ballot access laws in the States, based solely on facts and data, supported by citations,

10 based on verifiable research methods and mathematical comparisons to assist the Court to

11 determine if the current signature collection requirements imposed by A.R.S. 16-341 on

12 independent presidential candidates exceeds the number of signatures necessary to vindicate the

13 State's interest in preventing ballot clutter and voter confusion.  Mr. Winger's testimony should

14 be admitted in full as complying with the requirements of Rule 702 of the Federal Rules of

15 Evidence.

16 Respectfully Submitted,

17

18 Dated:  February 19, 2019                              ___**s/ Paul A. Rossi**_____

19                                                        Paul A. Rossi, Esq.
                                                         *Counsel to Plaintiff*
20                                                       IMPG Advocates, Inc.
                                                        316 Hill Street
21                                                      Mountville, PA  17554
                                                       717.961.8978
22                                                     Paul-Rossi@comcast.net

# **CERTIFICATE OF SERVICE**

Plaintiff, by and through his undersigned legal counsel, hereby certifies that on this date a

true and correct copy of the foregoing document was served via the Court's ECF system on the

following opposing counsel:

Kara Karlson
Office of the Attorney General – Phoenix
*Counsel for Defendants*
1275 W Washington Street
Phoenix  AZ  85007-2997
Phone:  602-542-8118
Fax:  602-542-8308
AdminLaw@azag.gov
Kara.Karlson@azag.gov

Joseph Eugene LaRue
Office of the Attorney General – Phoenix
*Counsel for Defendants*
1275 W Washington Street
Phoenix AZ  85007-2997
Phone:  602-542-1763
Fax:  602-542-8308
AdminLaw@azag.gov
Joseph.Larue@azag.gov

Dated:  February 19, 2019            ___**s/ Paul A. Rossi**_____
                                            Paul A. Rossi, Esq.
                                            *Counsel to Plaintiff*
                                            IMPG Advocates, Inc.
                                            316 Hill Street
                                            Mountville, PA  17554
                                            717.961.8978
                                            Paul-Rossi@comcast.net

PLAINTIFF'S OPPOSITION TO DEFENDANT'S  MOTION TO EXCLUDE THE EXPERT TESTIMONY OF
RICHARD WINGER - 8